UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GLENN KRASNER,

                Plaintiff,

-against-

THE CITY OF NEW YORK, AND THE FIRE
DEPARTMENT OF THE CITY OF NEW YORK,

                Defendant,
------------------------------------------------------------X

**11-CV-02048-PGG**

**AMENDED COMPLAINT
AND JURY DEMAND**

## I.  PRELIMINARY STATEMENT

1.      Plaintiff GLENN KRASNER (hereinafter "Plaintiff") has commenced this action pursuant to the Americans With Disability Act (herein "ADA") as amended due to being subjected to intentional discrimination by being subjected to an unlawful termination by reason of his disability. This action seeks declaratory, equitable relief, compensatory damages, costs, and attorney fees.

## II.  JURISDICTION AND VENUE

2.      The Court has jurisdiction over the defendant pursuant to 42 U.S.C. 12117 as this matter concerns disability discrimination in employment. Plaintiff has commenced this action pursuant to the Americans with Disabilities Act.   Plaintiff duly filed a formal complaint with the EEOC and a notice of right to sue letter was issued. This case was commenced within 90 days of receipt conferring jurisdiction on this Court.

3.      This action properly lies in the Southern District of New York, pursuant to 28 U.S.C. 1391 (b), because the claim arose in this District and because the unlawful employment practice was committed in this District.

### III.  THE PARTIES

4.      The plaintiff has a disability and perceived disability (Aspergers Syndrome) pursuant to the ADA and participated in protected activity pursuant to the ADA.  Plaintiff was employed as a Fire Inspector by defendant.   Plaintiff GLENN KRASNER was an employee of the Defendants the Fire Department of the City of New York and the City of New York (hereinafter "the Fire Department or Defendants") within the meaning of the ADA, New York State Executive law and the Administrative Code of the City of New York. Plaintiff was discriminated against due to his disability, perceived disability, and retaliated against for engaging in protected activity.  Plaintiff is a statutory plaintiff in that he has been subjected to intentional discrimination due to his disability and retaliation as set forth below.

5.      Defendants are charged by law with responsibility for the operation, management and control of the New York City Fire Department and is within the jurisdiction of this Court. Defendant is an employer within the meaning of the ADA, Executive Law and Administrative Code of the City of New York. At all times hereinafter mentioned, upon information and belief, defendant is existing under the laws of the State of New York with its principal place of business located in the County of New York.   Defendants are the statutory defendants and are employers as defined by the ADA.

### IV.  FACTUAL STATEMENT

6.      Plaintiff was hired on June 29, 1992 as Fire Protection Inspector.  Plaintiff has a disability and perceived disability under the law to wit. Asperger's Syndrome.  Asperger's is a disorder on the spectrum of autism disorders and is considered a pervasive developmental disorder.

7.      Plaintiff's Asperger's syndrome is characterized by significant difficulties in social interaction, along with restricted and repetitive patterns of behavior and interests and atypical use of language as set forth below. Plaintiff's Asperger's syndrome also caused him to have difficulty

with social interactions, work interactions and at times caused him to be extremely passionate about just one or two topics, with little patience. He also exhibited difficulties managing conflict because he often misinterpreted social interaction. Put simply, Plaintiff's Asperger's Syndrome can cause him to be socially and emotionally inappropriate. See Dr. Gleacher's medical report dated January 29, 2009 attached as Exhibit "A."

8.      Plaintiff's condition impacted major life activities to wit mental and emotional processes such as thinking and interacting with others. His condition is permanent. In addition, Plaintiff's Asperger's Syndrome was perceived by Defendant as a substantially limiting impairment.

9.      At all times relevant in his career as a Fire Protection Inspector, Plaintiff performed his responsibilities as in an exemplary manner. In fact, there is no dispute that his performance as Fire Protection Inspector was exemplary and that he was terminated for conduct as opposed to performance. Plaintiff's conduct was a manifestation of his Asperger's.

10.      Every morning, for five business days in a row, prior to February 14, 2006, Examiner Holbert Murray came into Plaintiff's cubicle, and yelled at him to serve a Repeat Violation for a respondent who already complied with the terms and requirements of the original violation.

11.      The documentation of compliance included 30 pages of NYC DOB applications and drawings, already approved my NYC DOB, and submitted to NYC DOB by a New York State Licensed architect. Besides all the DOB stamped and approved documentation, was a copy of the architect's bill for $17,000. Plaintiff would not serve a repeat violation on somebody who already complied with the original violation issued by another inspector.

12.      On the February 14, 2006, Holbert Murray yelled at Plaintiff to do the same thing, and threw the file on his desk. Plaintiff placed the file on his desk and told him that he would not

issue a repeat violation to a respondent who already complied with the original violation, and then walked back to his cubicle. Mr. Murray then came into his cubicle screaming and yelling that he was going back to serve that repeat violation, and he repeatedly physically body pushed his chair while doing so. Plaintiff stood up and told Mr. Murray to get away from him. When Examiner William Dease attempted to intervene, Plaintiff did tell them to both get away from him, or he would "fuck them both up." The next week, after DO1 DCI John Tuah ordered him to go back to the premises and write the repeat violation. Plaintiff did so without incident. For the above incident, plaintiff was not initially charged.

13.     Plaintiff was eventually served with twelve charges, ten of which were for the above incident in 2007 and then was served again regarding this incident in 2009. The 10 charges were "banked" and held until the verbal incident on April 24, 2007 which occurred more than one year later from the above incident.

14.     The Virginia Tech incident occurred after Plaintiff spent two days investigating a completely dead account, that had became dead because the wrong address was entered into the computer, after the account was established. After much legwork, Plaintiff was able to ascertain that the reason the account was dead, was because after the wrong premise address was entered into the computer after the initial inspection, the wrong address was generated on all subsequent inspection orders. After going to the original correct address and reestablishing the account again, as a new account with the correct address, Plaintiff voided out the old account with the incorrect address, and performed all the necessary paperwork and surveys.

15.     On April 24, 2007, Examiner William Dease  kept insisting that Plaintiff go back to the premises, and have the president of the company on the account sign the survey form he had done. The president of the company already declined to do so, but Mr. Dease kept insisting that

Plaintiff go back.  That is when Plaintiff made the Virginia Tech joke.

16.     Plaintiff was served the 12 charges on May 4, 2007, there was a stipulation that he seek treatment at the FDNY Counseling Unit.

17.     Plaintiff reported the next day to the counseling unit, and reported to FDNY counselor Michael Goldman and FDNY psychiatrist Sarah Gleacher every week for the next 3.5 years.   During this time, FDNY psychiatrist Dr. Sarah Gleacher diagnosed Plaintiff with Adult Asperger's Syndrome, and providing him with treatment and medication. (Exhibit "A")

18.     Upon arrival on work on the morning of Friday, September 12, 2008, Plaintiff submitted his previous four days sick leave forms for Monday, September 9, 2008 through Thursday, September 11, 2008.  Every morning on those sick days, Plaintiff called in at 8:00 a.m., and reported to Examiner Gavril Brazilier that was utilizing his sick days from my accumulated sick leave time. Plaintiff discovered later that morning, despite having followed all sick leave protocols correctly, Mr. Murray had written Plaintiff up as AWOL.  This function was not even under Murray's jurisdiction - it is under DCI John Tuah.

19.     On Monday, October 20, 2008, Holbert Murray had DCI John Tuah bring Plaintiff into the Fire Prevention District Office Manager Sam Asomoah's office, and had him written up for leaving the office later than 9:00 a.m. to go into the field, despite most inspectors  leaving at 9:30 a.m. every morning.  Plaintiff tried to explain that he arrives in every morning between 7:00 and 7:30 a.m. (8:00 a.m. is the official start time), to do thorough research on appointments, and he gets building superintendent's telephone numbers on premise accounts,  in order to facilitate access to premises.  This allows a more efficient use of inspection time by assuring access. He consistently had a 99.99% access rate into premises as a result of this.  Sam Asomoah said he did not care about any of that, and that Plaintiff should leave the office no later than 9:00 a.m., and he officially wrote

Plaintiff up.  He signed the write-up and Plaintiff left the office in tears.

20.     On Thursday, December 1, 2008, Plaintiff arrived at work at 8:00 a.m., and after submitting the previous day's work, at 8:20 a.m., Inspector Abdel Mesbah needed more inspection orders to project their route for the day, do the research, and leave to do those inspections for the day. Examiner Murray, who had taken on sole responsibility of giving out the inspection orders, had not arrived in the office yet, although he was supposed to start at 8:00 a.m.  They went to Examiner Gavril Brazilier for the inspection orders, but he them that he was not allowed to give out the inspection orders, unless Murray did not come in.  He told them to wait and see if Murray would come in, if not, he would give us the inspection orders.  At 8:50 a.m., Murray arrived for work, and Plaintiff asked him and received the inspection orders, as well as Abdel Mesbah.  Plaintiff then started the day's route projection for the day, pulled all the files for those premises, and did his research for the day's stops.  At 10:15 a.m., Holbert Murray abusively yelled at Plaintiff to get out of the office.  Learning from his previous errors of trying to confront Murray, Plaintiff told him that he did not arrive in the office until 8:50AM, and he needed new work, and he could not get it because of his lateness.  He denied he was late, and yelled at plaintiff that he was going to write him up again for leaving the office late.

21.     Almost a month later, on Friday, January 9, 2009, at 5:10 a.m., the EEO Unit of FDNY was contacted by Plaintiff.  On the Monday, January 12, 2009, Plaintiff went to the FDNY EEO Unit and reported the incident to the unit, and was interviewed by Ms. Tiffany Lyttle, Esq. but the complaint of discrimination based on a disability was not investigated.

22.     On Thursday, February 05, 2009, plaintiff was falsely accused of making a personal phone call.

23.     On  February 25, 2009, Plaintiff contacted the FDNY EEO Unit and requested a

reasonable accommodation due his Asperger's Syndrome. The accommodation was to be transferred from Murray or not to be verbally abused. (Exhibit "B") Plaintiff could have transferred as there were upon information and belief other Fire Inspection positions available; plaintiff also could have swapped positions as well. Plaintiff's request was never responded too.

24.    On or about February 25, 2009, plaintiff was served with twelve charges. These charges all directly relate to Plaintiff's Asperger's Syndrome such as using inappropriate language and disruptive conduct stemming from the inappropriate language. (See Exhibit "C", the charges and Exhibit "A", the psychiatrist report from Dr. Gleacher.)

25.    On Thursday, February 26, 2009, Mr. Murray continued to berate Plaintiff.

26.    On Monday, April 27, 2009, Plaintiff had to wait until 8:40 a.m. for Holbert Murray to arrive, so that he could get more work. When he failed to leave at 9:00 p.m., he yelled at Plaintiff to get out of the office or he was going to write him up again.

27.    Starting on Thursday, July 23, 2009, upon returning to work, Plaintiff had to now go through an additional level of security, because the FDNY had deactivated his photo ID access pass. He had to sign a sign-in sheet every morning, have his bags go through an X-ray machine, and had to empty all his belongings out and walk through the metal detector, even though he was still in full uniform and still performing his job.

28.    Every morning after the total scanning, Plaintiff would receive a visitor's pass that he had to wear, and to get to his unit on the 3rd floor. Plaintiff would have to wait for somebody to come in through the doors to the work area, since his pass was deactivated. These humiliating security measures in front of all the other inspectors would continue until his termination.

29.    Plaintiff was terminated effective on or about November 23, 2009. (Exhibit "C")

30.    On Thursday, January 07, 2010, the FDNY Employee Bulletin Newsletter was

distributed to every FDNY office and firehouse, to all 14,000 FDNY Employees, with the paychecks, and they published all 12 charges against Plaintiff and his letter of termination from former FDNY Commissioner Nicholas Scoppetta, for all his former colleagues and friends to see.

31.    Plaintiff has complied with all conditions precedent to commencing this suit and has exhausted his administrative remedies including but not limited to his contractual rights under the collective bargaining agreement.

32.    As a result of defendants' actions, plaintiff suffered and was damaged.

33.    Plaintiff is an employee and a qualified person with a disability within the three-pronged definition of Title I of the ADA.

34.    The ADA prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's disabilities.

35.    Plaintiff suffers from Aspergers Syndrome that limits Plaintiff's ability to perform major life functions as set forth above.

36.    Defendant was aware of his Aspergers and that the Aspergers related directly to the charges that were brought against Plaintiff but continued to knowingly pursue those charges. In short, the conduct set forth in the charges were a direct manifestation of his illness and was triggered by the harsh and abusive treatment at the hands of his supervisors.  Plaintiff otherwise performed the functions of his position in an exemplary manner. Despite knowing that the Asperger was cause of the conduct issues, defendant terminated plaintiff in violation of the ADA.

## FIRST CLAIM
### AGAINST DEFENDANT-ADA

37.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

38.     As a result of the willful activities of defendant, plaintiff has been deprived of equal employment opportunities based upon his disability, and perceived disability discrimination in violation of the Americans with Disabilities Act 42 U.S.C. 12112.

## SECOND CLAIM
## AGAINST DEFENDANT
## ADA-REASONABLE ACCOMMODATION

39.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

40.     Plaintiff, despite his disability, with a reasonable accommodation, is capable of performing the essential functions of her job.

41.     Plaintiff requested from Defendants a reasonable accommodation (a transfer) and Defendants failed to reasonably accommodate,  even though Plaintiff provided proper medical documentation.

42.     Reasonably accommodating Plaintiff would not have been an undue hardship on Defendants.  Plaintiff would have been able to perform the essential functions of his position with the accommodation. As a result of the willful activities of defendant, plaintiff has been deprived of equal employment opportunities based upon a failure to accommodate in violation of the Americans with Disabilities Act 42 U.S.C. 12112.

## THIRD CLAIM
## AGAINST DEFENDANT  ADA-RETALIATION

43.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

44.     Plaintiff engaged in protected activity as defined by the ADA as delineated above. Defendant retaliated against Plaintiff because of his complaints regarding his opposition to discrimination.

45.     Defendant acted intentionally and with malice and reckless indifference to Plaintiff's federally protected rights.

46.     As a result of the willful activities of defendant, plaintiff has been deprived of equal employment opportunities based upon retaliation in violation of the Americans with Disabilities Act 42 U.S.C. 12112.

## FOURTH CLAIM
### AGAINST DEFENDANT-ADA FAILURE TO
### ENGAGE IN THE INTERACTIVE PROCESS

47.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48.     Defendants refused to enter into an interactive process of negotiation in violation of the ADA.

49.     Defendant acted intentionally and with malice and reckless indifference to Plaintiff's federally protected rights.

50.     As a result of the willful activities of defendant, plaintiff has been deprived of equal employment opportunities based upon his disability, perceived disability discrimination and retaliation  in violation of the Americans with Disabilities Act 42 U.S.C. 12112.


## FIFTH CLAIM
### AGAINST DEFENDANTS-NYS EXECUTIVE LAW

51.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52.     As a result of the foregoing, defendant violated Executive Law § 296 by subjecting plaintiff to a discriminatory termination based on his disability and perceived disability.  As a result

of defendant violating the Executive Law plaintiff has been damaged.

## SIXTH CLAIM
## AGAINST DEFENDANTS-NYS EXECUTIVE LAW-RETALIATON

53.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

54.    As a result of the foregoing, defendant violated Executive Law § 296 by

subjecting plaintiff to a retaliatory termination. As a result of defendant violating the Executive Law,

plaintiff has been damaged.

## SEVENTH CLAIM
## AGAINST DEFENDANTS-NYS EXECUTIVE LAW-ACCOMMODATION

55.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

56.    As a result of the foregoing, defendant violated Executive Law § 296 by failing to

reasonably accommodate plaintiff.  As a result of defendant violating the Executive Law , plaintiff

has been damaged.

## EIGHTH CLAIM
## AGAINST DEFENDANTS-NYS EXECUTIVE LAW-INTERACTIVE PROCESS

57.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

58.    As a result of the foregoing, defendant violated Executive Law § 296 by failing to

engage Plaintiff in an interactive process in an effort to accommodate plaintiff.  As a result of

defendant violating the Executive Law , plaintiff has been damaged.

## NINTH CLAIM
## AGAINST DEFENDANTS-ADMINISTRATIVE CODE

59.    Plaintiff repeats, reiterate, and re-alleges each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

60.    This Court has concurrent jurisdiction pursuant to New York City Administrative Code § 8-502.

61.    As a result of the foregoing, defendant violated the Administrative Code of the City of New York § 8-107 by subjecting plaintiff to discriminatory termination due to his disability and perceived disability. As a result of defendant violating the Administrative Code, plaintiff has been damaged.

## TENTH CLAIM
## AGAINST DEFENDANT-ADMINISTRATIVE CODE-RETALIATION

62.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

11 As a result of the foregoing, defendant violated the Administrative Code of the City of New York § 8-107 by subjecting plaintiff to a retaliatory termination. As a result of defendant violating the Administrative Code, plaintiff has been damaged.

## ELEVENTH CLAIM
## AGAINST DEFENDANT-ADMINISTRATIVE CODE-ACCOMMODATION

63.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

64.    Defendants refused to reasonably accommodate plaintiff in violation of the Administrative Code of the City of New York.

## TWELFTH CLAIM
## AGAINST DEFENDANT-ADMINISTRATIVE CODE-INTERACTIVE PROCESS

65.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

66.     Defendants refused to enter into an interactive process of negotiation in violation of the Administrative Code of the City of New York.

## THIRTEEN CLAIM FOR RELIEF-WAGES

67.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as it more fully set forth herein.

68.     Plaintiff was employed by defendant and Plaintiff satisfactorily performed the functions of his position.

69.     That the plaintiff carried out all his obligations under the terms of the aforesaid oral agreement, however, defendant has not paid all of the wages and contributions as set forth in the attached notice of claim.

70.     That  plaintiff is entitled to be paid $24,4000 in unpaid wages and other compensation.

71.     That the plaintiff has demanded payment, and the defendant has wrongfully refused to pay any portion thereof.   The failure to pay is a willful violation.

72.     That the plaintiff has completed all the conditions precedent to the bringing of this claim.

WHEREFORE, Plaintiff respectfully requests a judgment against Defendant as follows:

A.      Judgment for all past salary owed and benefits lost retroactively plus twenty five percent in liquidated damages and attorney fees pursuant to New York State Labor Law §198 plus costs and disbursements of this proceedings and any other relief that is just and equitable including retroactive reinstatement and expungement of the termination records.

B.      Judgment for pain and suffering and other compensatory damages including back pay as a result of the unlawful termination;

    C.     A reasonable attorney fees plus the costs and disbursements of this lawsuit, and such additional relief as this Court may deem just and proper under the circumstances

**PLAINTIFF HEREIN DEMAND A JURY TRIAL.**

Dated: New York, New York
       July 26, 2011                         Respectfully submitted,

                                        STEWART LEE KARLIN
                                        Attorney for Plaintiff
                                        9 Murray Street, Suite 4W
                                        New York, NY 10007
                                        (212) 792-9670

# EXHIBIT "A"

Sarah Gleacher, M.D.
24 East 12th Street, Suite 605
New York, NY 10003
(212) 255-5800

January 20, 2009

Bruce K. Kaye, Esq.
11 Park Place
Suite 1801
New York, NY 10007

Dear Mr. Kaye,

Glenn Krasner has been in my care since August 2007. Enclosed is a summary of his treatment course to date. Mr. Krasner has consented to disclosure of the information contained in this report.

Documents Reviewed:

- Charges for Violation of Regulations dated April 30, 2007 arising from incidents occurring on February 14, 2006 and April 24, 2007;
- Notes form Glenn Krasner's sessions with Michael Goldman, Counselor at the FDNY's Counseling Service Unit; and
- Glenn Krasner's medical records from Weill Cornell Medical College

Background Information:

Mr. Krasner is a 45-year-old male who lives alone in an apartment in Manhattan. Mr. Krasner has been steadily employed by the FDNY as a Fire Prevention Inspector for more than 16 years.

Mr. Krasner was referred for a psychiatric evaluation in August 2007 by his therapist at the FDNY Counseling Service Unit. Mr. Krasner had been mandated to receive four months of counseling following an incident at work in April 2007 in which he stated, "MetroTech is Virginia Tech." He made this comment in the presence of several coworkers. Mr. Krasner described this remark as an attempt at humor, and when no one laughed at his comment, he repeated it once or twice. Shortly after making the comment, Mr. Krasner was reprimanded by his supervisor, mandated to therapy, and has been required to go through security screening when he enters MetroTech every morning. Mr. Krasner denied making the additional statements contained in the charges related to this incident.

<u>Treatment Course</u>:

At his initial evaluation, Mr. Krasner discussed the importance of his work at length. He stated that he often worked later than his paid hours, and tended to bring paperwork home with him. He stated that he found it unbearable to leave work unfinished from one day to the next, and had been reprimanded in the past for staying at MetroTech to finish his work in the late afternoon and evening. Mr. Krasner has rarely taken a sick day, and has accrued over 700 hours of unused vacation time. He often volunteers for non-regular appointments such as construction permits and new accounts, which are assignments generally avoided by other inspectors. He regularly exceeds the average number of inspections per day, and had perfect attendance in 1996. When asked about the root of his deep commitment to his work, Mr. Krasner stated, "The City has given me this job, and I just want to do the best job I can." Mr. Krasner described feeling extremely sensitive to criticism by supervisors at work, and has experienced transient episodes of suicidal thinking when his work has been criticized. Mr. Krasner is particularly proud to have nominated for Inspector of the Month in May 2002, and to have been awarded Inspector of the Month in April 1997 and Inspector of the Year in 2006.

Mr. Krasner described leading an extremely isolated life outside of work. He has no close friends, and has not been involved in an intimate relationship in several years. He often spends entire weekends inside his apartment, without going outside at all. He described feeling depressed and lonely. Mr. Krasner desires relationships but appears to lack the social skills required to develop friendships.

In addition, Mr. Krasner exhibits some ritualized behavior, such as rechecking the locks on his doors up to six times. He is also a compulsive reader. He reads for many hours each day, often well into the night. Mr. Krasner reads magazines in a compulsive manner, reading the entire magazine in order from the first page to the last, without stopping, whether or not he is interested in the subject manner.

Mr. Krasner was initially resistant to using medication to treat his obsessive, compulsive and depressive symptoms, but eventually agreed to a trial of fluvoxamine (an antidepressant). Mr. Krasner's hypersensitivity and depressed mood responded well to the medication, but he developed insomnia. Mr. Krasner was switched to sertraline, and has continued to experience improvement in his symptoms. As Mr. Krasner progressed in treatment, it became apparent that he had severe limitations in his ability to perceive and respond to social cues. He made several unsuccessful attempts to meet people through internet and telephone chat rooms. On one occasion, Mr. Krasner brought a Playboy magazine to an appointment with the purpose of sharing an article about a famous comedian. He appeared totally unaware that bringing a Playboy magazine to his female psychiatrist might be inappropriate. Mr. Krasner's diagnosis was changed from Obsessive Compulsive Disorder to Asperger's Disorder.

Individuals with Asperger's disorder experience severe and sustained impairment in social interaction, and develop restricted, repetitive patterns of behavior. These symptoms lead to significant impairment in social and occupational functioning. People with Asperger's Disorder are often highly intelligent and may possess unusual skills, but also have difficulty managing feelings of anger and depression.

Mr. Krasner also carries the diagnosis of Major Depressive Disorder. His symptoms include depressed mood, suicidal thoughts, isolative behavior, feelings of worthlessness and loss of interest in everyday activities.

Indicative of his commitment to improving his personal life and preserving his professional life, Mr. Krasner has remained in therapy (after completing mandated treatment) and has been receiving psychotropic medication over the past 16 months. He has not been charged with a Violation of Regulations since engaging in psychiatric treatment.

Past Psychiatric History:

Mr. Krasner engaged in psychotherapy with a private psychologist for approximately one year in 1996 following a work-related incident. Mr. Krasner often stayed late to complete paper work, consistent with the restricted, rigid patterns of behavior seen in individuals with Asperger's Disorder. One evening, Mr. Krasner continued working despite his supervisor's request that he leave. An FDNY Captain then called Mr. Krasner and asked him to stop working. Eventually a firefighter approached Mr. Krasner. He then agreed to leave the premises under threat of being forcibly removed.

Prior to August 2007, Mr. Krasner had never been treated with psychotropic medication. He has never been admitted to a psychiatric hospital. He reported making a suicidal gesture as a teenager by running into traffic. He has made no other suicide attempts. Mr. Krasner has never experienced psychotic symptoms. He has no history of homicidal ideation or violent behavior. He does not own a gun.

Substance Abuse History:

Mr. Krasner has no history of alcohol or substance abuse.

Past Medical History:

Mr. Krasner has a history of hyperlipidemia, and is being treated with Crestor. He was recently diagnosed with hypothyroidism. He is currently being treated with Synthroid, a thyroid replacement hormone.

Social and Occupational History:

Mr. Krasner was born on May 23, 1963 in Brooklyn, New York. He is the oldest of two children in his family. Mr. Krasner was raised by both of his parents, who have remained

5

married to one another. His father, age 78, is a retired salesman, and has a history of coronary disease. Mr. Krasner's mother, age 79, works part-time as a bookkeeper and is in good health. There is no family history of psychiatric problems. Mr. Krasner grew up in Valley Stream, Long Island and attended public schools through the 12th grade. He was enrolled in many advanced placement courses during high school, and finished 14th out of 465 students in his graduating class. Mr. Krasner earned a degree in Mechanical Engineering from Brooklyn Polytechnic Institute in 1988.

Mr. Krasner has never been married and does not have any children. He does not have any close friends. His support network consists of his parents and sister.

Prior to joining the FDNY in 1992, Mr. Krasner worked as a project manager for an environmental consulting firm, and as a quality control inspector for a plumbing supply company.

Legal History:

Mr. Krasner has no legal history.

Mental Status Examination:

Mr. Krasner was last seen on January 7, 2009. At that time, he presented as a casually-dressed, well-groomed man who appeared stated age. He was cooperative, coherent and oriented throughout the examination. As at previous appointments, Mr. Krasner appeared anxious and uncomfortable, and made limited eye contact. His mood was mildly depressed and his affect was constricted. Mr. Krasner denied psychotic and manic symptoms. He denied suicidal or homicidal thoughts.

DSM-IV Diagnosis:

Axis I: Asperger's Disorder
        Major Depressive Disorder
Axis II: None
Axis III: Hypothyroidism
Axis IV: Psychosocial and Occupational Problems
Axis V: 65

Summary and Conclusion:

Glenn Krasner is a 45-year-old Fire Prevention Inspector who was charged with two Code of Conduct violations following the utterance of an inappropriate comment in the presence of coworkers in April 2007. These charges were bundled with multiple charges related to a separate incident that occurred in February 2006. Mr. Krasner suffers from Asperger's Disorder, and consequently exhibits severely impaired social skills. This leads to awkward incidents at work and results in his inability to develop and maintain

relationships. However, his ability to function at a high level as an inspector is not affected, as evidenced by Mr. Krasner's Inspector of the Year award in 2006.

In conclusion, I find with reasonable medical certainty that Glenn Krasner suffers from Asperger's Disorder and Major Depressive Disorder. Symptoms related to these psychiatric disorders, in particular impaired ability to respond to social cues, rigid behavioral patterns, and hypersensitivity to criticism, have contributed to Mr. Krasner's difficulty relating to his co-workers and supervisors, and to the incidents that resulted in the charges of Code of Conduct violations. He has no history of violent behavior. He has no history of legal problems. Mr. Krasner is currently receiving appropriate treatment for his psychiatric conditions, in the form of weekly psychotherapy and psychotropic medication. He does not pose a threat to himself or to others at the present time. Mr. Krasner has been a dedicated and highly functional Fire Prevention Inspector for over 16 years, and continues to successfully fulfill his work-related responsibilities at the present time.

Yours sincerely,

Sarah Gleacher, MD

Psychiatrist, The World Trade Center Medical Monitoring and Treatment Program
Diplomate of the American Board of Psychiatry and Neurology

EXHIBIT "B"



EMSC OGP 110-04
November 20, 2000

## REQUEST FOR A REASONABLE
## ACCOMMODATION FOR A DISABILITY

It is the policy of the Fire Department to provide reasonable accommodations to employees with disabilities in order to enable them to enjoy equal employment opportunities. Such requests will be considered in accordance with the Fire Department's Employee Reasonable Accommodation Policy.

**INSTRUCTIONS:** Any Fire Department employee with a disability as defined in Section 3.1 of the Fire Department's Employee Reasonable Accommodation Policy wishing to request a reasonable accommodation should complete Section I of this form and forward it in an envelope marked "Confidential" to the Fire Department's Equal Employment Opportunity (EEO) Office, Fire Department Headquarters, 9 MetroTech Center, Room 1S-3, Brooklyn, NY 11201-3857.

---

**SECTION I – TO BE COMPLETED BY EMPLOYEE**

Name: _GLENN KRASNOV_

Address: _471 CENTRAL PARK WEST, APT #2B_
_NEW YORK, NY 10025-3313_

Telephone: (Home) _(212)-932-9685_   (Work) _(718)-999-0634_
_(917)-941-0210_

Social Security No.: _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_

Office/Civil Service Title: _FIRE PREVENTION INSPECTOR - OFFICE #01_

Bureau: _FIRE PREVENTION_

Unit: _DISTRICT OFFICE #01_

Work Location: _3RD FLOOR - DISTRICT OFFICE #01_

Supervisor/Manager: _JOHN TUAH_

CONTINUED ON REVERSE

2009 FEB 25   PM 4:4   EEO UNIT - FDNY

1

**SECTION I – TO BE COMPLETED BY EMPLOYEE (CONTINUED)**

Describe the limitation affecting your ability to perform your job and how long you expect it to last:

ADULT ASPERGER'S DISEASE/SYNDROME DOES NOT AFFECT MY ABILITY TO PERFORM MY DUTIES EFFECTIVELY. HOWEVER, IT DOES LEAD TO AWKWARD MOMENTS B/ EXAMINER HOLBERT MURRAY, WHO POSSESSES AN ABUSIVE PERSONALITY

Describe the accommodation that you believe you need:

TO BE TRANSFERRED TO D.O. #03 OR HAVE HOLBERT MURRAY TRANSFERRED TO DIFFERENT DISTRICT OFFICE (LIKE WAS PREVIOUSLY DONE IN APRIL 2007).

State the nature of your disability: ADULT ASPERGER'S DISEASE/SYNDROME

COMPLETE ALL THAT APPLY:

☑ I am attaching medical documentation of my disability.

☐ I am attaching an authorization for release of medical records from my physician or other health care provider.

☐ I previously submitted medical documentation of my disability to the Bureau of Health Services.

02-25-2009
Date

_____
Signature of Employee

---

**SECTION II – FOR DEPARTMENT USE**

Date Received: _____  Intake No.: _____

Date of Acknowledgement: _____

Disposition: _____

_____

Date of Notification of Disposition: _____

11/00

# EXHIBIT "C"

101283503004

01/05/2011  02:38   Received:   718-999-0099       NYFD      Jan  5 2011 02:37pm        PAGE   03/23

In the Matter of Disciplinary Charges by the
**NEW YORK CITY FIRE DEPARTMENT**

                                    Petitioner          **COMMISSIONER'S DECISION**

-against-
                                                        OATH Index No. 2967/09
**GLENN KRASNER**                                       FDNY No. 94/06D
Fire Protection Inspector
District Office 1

                                    Respondent

On February 25, 2009, Fire Protection Inspector Glenn Krasner was served with the following charges based on violations of the Civilian Code of Conduct:

**Charge 1:** Chapter 1, Rule 6 – Refuse to Perform Duty on February 14, 2006.

**Charge 2:** Chapter 1, Rule 4 – Use of Profane Language and Discourteous Behavior to a Fellow Employee on February 14, 2006.

**Charge 3:** Chapter 1, Rule 5 – Engage in Disorderly or Disruptive Conduct on February 14, 2006.

**Charge 4:** Chapter 1, Rule 3 – Conduct Prejudicial to the Good Order and Discipline of the Department on February 14, 2006.

**Charge 5:** Chapter 1, Rule 4 – Use of Profane Language and Discourteous Conduct to a Fellow Employee on February 16, 2006.

**Charge 6:** Chapter 1, Rule 5 – Engage in Disorderly or Disruptive Conduct on February 16, 2006.

**Charge 7:** Chapter 1, Rule 3 – Conduct Prejudicial to the Good Order and Discipline of the Department on February 16, 2006.

**Charge 8:** Chapter 1, Rule 5 – Engage in Disorderly or Disruptive Conduct Including Verbal and Physical Altercations on February 16, 2006.

**Charge 9:** Chapter 1, Rule 4 – Use of Profane Language and Discourteous Behavior to a Fellow Employee on February 16, 2006

**Charge 10:** Chapter 1, Rule 3 – Conduct Prejudicial to the Good Order and Discipline of the Department on February 16, 2009.

01/05/2011  02:38    718-999-8899          NYFD          Jan  5 2011 02:38pm          PAGE  04/23

**Charge 11:** Chapter 1, Rule 5 – Engage in Disorderly or Disruptive Conduct on April 24, 2007.

**Charge 12:** Chapter 1, Rule 3 – Conduct Prejudicial to the Good Order and Discipline of the Department on April 24, 2007.

A disciplinary hearing on the charges was held on July 21, 2009, before Administrative Law Judge Ingrid M. Addison at the Office of Administrative Trials and Hearings. In her Report and Recommendation dated August 18, 2009, the Judge found the Respondent guilty of the charges. I concur with the Judge's findings of fact and of guilt.

I have carefully reviewed Judge Addison's recommendation, the trial transcript and memoranda from Department counsel regarding conversations with FPI Krasner's supervisors. In addition, although FPI Krasner did not proffer a defense of disability, I reviewed FPI Krasner's Counseling Services Unit records disclosed by his counsel subsequent to the trial. In light of Fire Protection Inspector Krasner's history of misconduct and threats to the safety of Department employees I concur with Judge Addison's recommendation of termination.

Therefore, effective 0900 hours, on November 23, 2009, Fire Protection Inspector Krasner is hereby terminated from his position with the New York City Fire Department.

By order of

Nicholas Scoppetta

Date: _11-20-09_

<u>AFFIRMATION OF SERVICE</u>

STATE OF NEW YORK, COUNTY OF __New York____:

I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside at___New York____.

On __July 27, 2011_, I served the within Amended Complaint_

| | |
|---|---|
| [X ]Service by Mail | by mailing a copy to each of the following personas at the last known address set forth after each name below. |
| [ ]Personal Service on Individual | by delivering a true copy of each personally to each person named below at the address indicated.  I knew each person served to be the person mentioned and described in said papers as *a party therein:* |
| [ ]Service by Electronic Means | by transmitting a copy to the following persons by [ ] FAX at the telephone number set forth after each name below [ ] E-MAIL at the E-Mail address set forth after each name below, which was designated by the attorney for such purpose, and by mailing a copy to the address set forth after each name. |
| [ ]Overnight Delivery Service | by dispatching a copy by overnight delivery to each or the following persons at the last known address set forth after each name below. |

Megan Burrows Carpenter, Ass't Corp. Counsel
**MICHAEL A. Cardozo**, Corporation Counsel
of the city of New York
100 Church Street, Room
New York, New York 10007-2601

Dated on

STEWART LEE KARLIN, ESQ.
9 Murray Street, 4-W
New York, New York 10007
(212) 792-9670

Index No. 11-CV-02048-PGG                    Year 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLENN KRASNER,

Plaintiff,

-against-

THE CITY OF NEW YORK, AND THE FIRE
FIRE DEPARTMENT OF THE CITY OF
NEW YORK,

Defendant.

Signature (Rule 130-1.1-a)

**AMENDED COMPLAINT**

Print name beneath

STEWART LEE KARLIN, ESQ.

*Attorney for* Plaintiff

*Office and Post Office Address*

9 Murray Street, 4-W
New York, New York 10007
(212) 792-9670

To

Attorney(s) for

Dated
Service of a copy of the within is hereby admitted.
Dated

Attorney(s) for

==============================================

**NOTICE OF ENTRY**

PLEASE take notice that the within is a (*certified*)
true copy of a
duly entered in the office of the clerk of the within
named court on

Date,

Yours, etc.

*Attorney for*

*Office and Post Office Address*

To

Attorney(s) for

==============================================

**NOTICE OF SETTLEMENT**

PLEASE take notice that an order
of which the within is a true copy will be presented
for settlement to the Hon.
one of the judges of the within name Court, at

on
at
Dated,                    M.

Yours, etc.

*Attorney for*

*Office and Post Office Address*

To

Attorney(s) for